IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IKEMEFUNA CHUKWURAH,<br><br>    Plaintiff,<br><br>v.<br><br>CORIZON HEALTH CARE, *et al.*,<br><br>    Defendants. | Civil Action No.:  PX-22-212 |

## MEMORANDUM OPINION

Plaintiff Ikemefuna Chukwurah, an inmate at Maryland Correctional Institution – Hagerstown ("MCIH"), filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him adequate medical care. Defendant Secretary of the Department of Public Safety and Correctional Services ("DPSCS"), Robert L. Green, and Defendants Corizon Health, Inc., Dr. Contah Nimely, and nurse practitioner, Vera Okoye, move to dismiss the action or alternatively for summary judgment to be granted in their favor; and Defendant Dr. Yonas Sisay has moved to dismiss his claims on limitations grounds. ECF Nos. 26, 30, 33. Chukwurah has responded. ECF Nos. 29, 35, 37. Chukwurah also moves for "permission to make a declaration" (ECF No. 36), for appointed counsel (ECF No. 40), for leave to file a surreply (ECF Nos. 41, 42), and for assistance in serving summonses to healthcare providers. ECF No. 43. The Court has reviewed the pleadings and finds no hearing necessary. Local Rule 105.6 (D. Md. 2021). For the following reasons, Chukwurah's motions are granted in part and denied in part, and the Defendants' motions are granted.

## I.  Background

On October 13, 2017, Dr. Yonas Sisay prescribed Chukwurah Lisinopril for his hypertension. Lisinopril is an Angiotensin Converting Enzyme (ACE) inhibitor which "relaxes blood vessels allowing blood to flow more easily." ECF No. 6-3; ECF No. 30-3 ¶¶ 5, 9. Dr. Sisay advised Chukwurah that he should request a sick call visit if he developed any knee pain while on Lisinopril. ECF No. 6 at 2, 4.

Three days later, Plaintiff was transferred to Maryland Correctional Training Center. ECF No. 30-5 at 52. A new treating physician, Dr. Conteh Nimely, placed Chukwurah on a hypertension management plan and renewed the Lisinopril prescription. *Id.* Chukwurah next saw Dr. Nimely again on May 15, 2018. ECF No. 30-3 ¶ 10. During this visit, Dr. Nimely concluded that Chukwurah's hypertension was improving. *Id.* Dr. Nimely continued Chukwurah on Lisinopril, and also advised that he lose weight and exercise. *Id.*

On August 14, 2018, Dr. Jonathan Thompson examined Chukwurah during a chronic care visit. ECF No. 30-5 at 84-85. Chukwurah's blood pressure was elevated at 158/98. Chukwurah admitted that he had not been taking the Lisinopril as prescribed, but only when he was not feeling well. *Id.* Dr. Thompson educated Plaintiff on the dangers of medication noncompliance, to include increased risk of stroke, renal failure, angina, and transient ischemic attack. *Id.*; ECF No. 30-3 ¶¶ 11, 12. At the follow up chronic care visit on November 20, 2018, Chukwurah reported that he resumed taking Lisinopril as directed. ECF No. 30-5 at 91-92.

On January 1, 2019, Corizon became the new health care provider for DPSCS. ECF No. 30-3 ¶ 14. On April 4, 2019, Dr. Nimely renewed Chukwurah's Lisinopril, and reminded

2

Chukwurah to request a sick call visit if he developed elbow or knee pain. *Id.* ¶ 15; ECF No. 6 at 3.

On July 13, 2019, Dr. Nimely examined Chukwurah. Chukwurah reported that three weeks prior, he stopped taking Lisinopril because he developed constipation and a dry cough. ECF No. 30-3 ¶ 16. Dr. Nimely suggested that Chukwurah switch to a different blood pressure medication, Cozaar. The doctor also discussed with him the risks, benefits, and potential side effects of the new drug. Chukwurah agreed to the change. *Id.*

Almost three months later, on October 2, 2019, Chukwurah saw nurse Amber Knoll complaining of right knee pain. ECF No. 30-5 at 109. Knoll observed that his knee was moderately swollen and prescribed ibuprofen. She also referred Chukwurah for a physician follow up. *Id.* The next day, nurse Tracie Fontes examined Chukwurah. ECF No. 30-5 at 112-13. Fontes observed that Chukwurah's leg was swollen, warm and red. *Id.* Fontes provided Chukwurah crutches and instructed him to keep his leg elevated when possible. *Id.*

The same afternoon, Chukwurah saw nurse practitioner Vera Okoye. *Id.* at 112, 123-24. Chukwurah's blood pressure was elevated; he complained that on a scale of 1 to 10, his pain was a 10; and he was short of breath on exertion. ECF No. 30-4 ¶ 5. Chukwurah also reported that he had stopped taking his new blood pressure medication because he had read it caused cancer. *Id.* Because Okoye suspected that Chukwurah could be suffering from deep vein thrombosis ("DVT"), or a blood clot in the lower leg, she requested a venous doppler ultrasound be performed on his leg to confirm the presence of a clot. *Id.* Chukwurah also agreed to restart Lisinopril and Okoye prescribed it through December 3, 2019. *Id.*

On October 9, 2019, Chukwurah received the venous ultrasound at a nearby medical center. ECF No. 6 at 3; ECF No. 30-5 at 130, 132. The ultrasound showed no evidence of DVT and

Chukwurah was diagnosed as having sustained a muscle tear. *See* ECF No. 30-5 at 218-24; ECF No. 6-4 at 4, 6, 11-14. He was ordered to stop the anticoagulant and begin taking Naproxen sodium. ECF No. 30-5 at 134; ECF No. 6-4 at 18.

When Chukwurah returned to the prison, Dr. Nimely examined him. Chukwurah reported that his leg improved and he no longer needed crutches. ECF No. 30-3 ¶ 21. Dr. Nimely advised that the pain would subside as the swelling decreased, but if the swelling persisted, Chukwurah should submit a sick call. ECF No. 6 at 3. This was Dr. Nimely's last interaction with Chukwurah.

At the next chronic care visit on December 23, 2019, Dr. Mahboobeh Memarsadeghi examined Chukwurah. ECF No. 30-5 at 141-42. Chukwurah had stopped taking his Lisinopril again, and predictably, his hypertension had worsened. *Id.* Dr. Memarsadeghi added a diuretic hydrochlorothiazide ("HCTZ") to Chukwurah's medication regimen. *Id.*

By January 2020, Chukwurah asserts, he could barely walk due to knee pain and had placed many sick call requests. ECF No. 6 at 4. Chukwurah saw Dr. Memarsadeghi on March 20, 2020. ECF No. 30-5 at 147. The doctor noted no joint pain or swelling, and he continued Chukwurah on the same medication regimen. *Id.* at 148.

On September 24, 2020, Chukwurah was seen for a sick call, complaining that his left knee had been hurting for the last year. ECF No. 30-5 at 150; ECF No. 6-5 at 1-2. He reported that in the past he was treated only for the swelling. The nurse ordered an x-ray. ECF No. 30-5 at 154. Chukwurah also reported that he wanted to stop his medications to see if his blood pressure was better following a diet change, and so the nurse scheduled a follow up blood pressure check. *Id.* at 150.

On October 12, 2020, Chukwurah's left knee had been x-rayed. The x-ray showed no evidence of acute fracture, dislocation, subluxation or osseous (bone) abnormality. ECF No. 30-5 at 237; *see* ECF No. 6-2 at 3.

On October 29, 2020, Chukwurah was transferred to MCIH. ECF No. 30-5 at 157. The next day, he submitted a sick call complaining that he could not stand up without assistance. ECF No. 6-5 at 3. On November 24, 2020, Dr. Tewodros Teferra assessed Chukwurah and found his hypertension stable and prescribed Tylenol and a muscle rub for Plaintiff's left knee. ECF No. 30-5 at 161. On February 23, 2021, Chukwurah failed to attend his sick call appointment but did request an MRI of his left knee two days later. ECF No. 6-5 at 6; ECF No. 30-5 at 16-169.

On March 25, 2021, Chukwurah saw Dr. Jerry Ann Hunter for cardiovascular chronic care and pain in his left knee. ECF No. 30-5 at 171; *see* ECF No. 6-5 at 9. Dr. Hunter ordered a bilateral knee x-ray and requested an orthopedics consultation. ECF No. 30-5 at 173. Dr. Hunter also renewed Chukwurah's hypertension medications and prescribed Naproxen and Robaxin because the Tylenol was not easing Chukwurah's pain. *Id.* at 177-178. Corizon's Utilization Manager denied the orthopedic consult request as not medically necessary and instead recommended a home exercise program or physical therapy evaluation. *Id.* at 240-42.

On April 2, 2021, Chukwurah's knees were x-rayed. The right knee showed "mild degenerative changes with reduced joint space and osteophytes formation," all stemming from mild degenerative joint disease. *Id.* at 238-39; ECF No. 6-2 at 1-2. The left knee was normal. *Id.*

On April 21, 2021, Chukwurah requested a sick call appointment because he believed that the osseus formations on his knee had been the result of taking Lisinopril. ECF No. 6 at 4; *see* ECF No. 6-5 at 12. Chukwurah wanted to discuss changing hypertension medications. *Id.* When

5

Chukwurah saw Dr. Hunter the next day, he complained that neither Dr. Nimely, Dr. Sisay, nor nurse practitioner Okoye had previously informed him of the potential risks of the drug. ECF No. 6 at 5. Dr. Hunter prescribed Norvasc instead of Lisinopril. *Id.*; ECF No. 30-5 at 186.

On August 18, 2021, Chukwurah submitted a grievance to the Inmate Grievance Office, complaining that medical staff failed to warn him about the side effects of his medication. ECF No. 6 at 6; ECF No. 6-6. On August 27, 2021, the grievance was dismissed because the Inmate Grievance Office is not authorized to consider grievances filed against private health contractors. ECF No. 6-6.

Thereafter, Chukwurah routinely saw medical providers in chronic care for his hypertension. ECF No. 30-5 at 200-01, 207-08. His medications were adjusted according to his reported symptoms and other diagnostic findings. *Id.* He was not prescribed Lisinopril. *Id.*

On January 28, 2022, Chukwurah filed suit in this Court. ECF No. 1. The Court[3] reviewed the Complaint for sufficiency and, finding it lacking, ordered Chukwurah to file an amended Complaint. ECF No. 4.

On March 10, 2022, Chukwurah filed an Amended Complaint, asserting that Defendants' deliberate failure to inform him of the adverse effects of Lisinopril resulted in pain and injury to his knee, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 6 at 5, 8. On July 27, 2022, Corizon[4], Dr. Nimely and nurse practitioner Okoye moved for dismissal or alternatively for summary judgment to be granted in their favor. ECF No. 30. Dr. Sisay separately moved to dismiss the Complaint, principally on limitations grounds. ECF No.

---

[3] This case had been originally assigned to the Honorable Paul W. Grimm. Upon his retirement, the case was reassigned to this Court on December 27, 2022.
[4] Corizon has since filed for bankruptcy, triggering an automatic stay of this case as to it, pursuant to 11 U.S.C. § 326. ECF Nos. 44 & 45.

33. Chukwurah responded to the motions but also filed several motions of his own. The court turns first to Chukwurah's motions.

### II. Chukwurah's Motions

#### A. Motion Seeking Permission to Make a Declaration

Chukwurah's motion essentially informs the Court that on August 1, 2022, Dr. Memarsadeghi requested that Chukwurah receive an orthopedic consult to remove the osseus growths in his knee. ECF No. 36. The Court construes the motion as a supplement to his response, and so it is granted.

#### B. Motion to Appoint Counsel

Chukwurah also asks for court appointed counsel, contending that his lack of training in the law and limited access to the law library may adversely impact his case. ECF No. 40. The Court's power to appoint counsel is discretionary, to be exercised where an indigent claimant presents exceptional circumstances. 28 U.S.C. § 19159(c)(1). *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Chukwurah has demonstrated the wherewithal to articulate the legal and factual basis of his claims. Thus, at this juncture, he has not shown such exceptional circumstances warranting the requested relief. Additionally, because Defendants' requested relief will end the case, the motion is denied as moot.

#### C. Motions for Leave to File a Surreply

Chukwurah asks to file surreplies regarding both dispositive motions. Surreplies are generally disfavored and not permitted in this court absent approval. *See* Local Rule 105.2(a) (D. Md. 2021). Surreplies are most appropriate where new arguments are raised by the opposing party in the reply. *See Lewis v. Rumsfeld*, 154 F. Supp.2d 56, 61 (D. D.C. 2001). The only possible new issue that Defendants raised in reply concerns the admissibility of certain exhibits that Chukwurah had attached to the Amended Complaint. Accordingly, the Court will consider Chukwurah's

surreplies to the extent they respond to this issue. *See* ECF No. 41. The motions are otherwise denied.

### D. Motion Seeking Assistance in Serving State Summons to Healthcare Providers

Chukwurah lastly asks the Court to provide the current addresses of nurse Tracie Fontes and Defendants Nimely and Okoye to the Health Care Alternative Dispute Resolution Office so that it may serve those parties in a separate proceeding. ECF No. 43. As grounds, Chukwurah notes that because these individuals no longer work at the prison, he does not have a good service address for them. *Id.* at 1. The Court is not in possession of such information and even if it were, no legal basis exists for the Court to supply such information to assist a party in a health claims matter. The motion is denied.

The court next turns to Defendants' Motions.

### III. Defendants' Motions

#### A. Standard of Review

Defendants move to dismiss the claims for lack of sufficiency pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing such motions, the Court accepts the well-pleaded allegations as true most favorably to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Dr. Nimely and nurse practitioner Okoye move alternatively for summary judgment to be granted in their favor under Federal Rule of Civil Procedure 56. Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)). *See also Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).

Chukwurah has not objected to treating the motions as ones for summary judgment. He has also included evidence beyond the four corners of the Amended Complaint. ECF Nos. 26, 30. The Court will thus treat the motion as one for summary judgment.

Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to…the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56©).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

With these standards in mind, the Court turns to the Defendants' motions.

### B. Secretary Green

Secretary Green correctly argues that because the Complaint fails to plausibly aver his personal participation in any of Chukwurah's care, the claim against him must be dismissed. Liability under § 1983 depends on individual participation in violating a plaintiff's constitutional rights. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Rather, to hold a supervisory officer liable, the Complaint must make plausible that the supervisor acted with deliberate indifference to, or tacitly authorized, a subordinates' misconduct that caused the plaintiff's constitutional injuries.  *See Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984) (discussing supervisory liability for an inmate's beating by prison guards); *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016).

The Complaint avers that Green's involvement was limited solely to dismissing Chukwurah's inmate grievance. *See* ECF No. 29 at 2. This alone does not extend liability for constitutionally inadequate care. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (citing *Whitington v. Ortiz,* 307 Fed. Appx. 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")). Secretary Green is thus dismissed from this suit.

### C. Medical Defendants

Chukwurah essentially alleges that Drs. Sisay and Nimely and nurse practitioner Okoye provided him inadequate medical care, causing "unnecessary and wanton infliction of pain" in contravention of the Eighth Amendment's prohibition on cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The claim, therefore, turns on whether each defendant's acts or omissions amounted to deliberate indifference to Chukwurah's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Deliberate indifference specifically requires the plaintiff to show that, objectively, he was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed to either provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal quotation marks and ellipses omitted).

Proof of an objectively serious medical condition, however, does not end the inquiry. The plaintiff must also demonstrate that the defendants exhibited "subjective recklessness" in the face

of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk known to the defendant at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000); *see also Jackson*, 775 F.3d at 179. [N]egligence or malpractice on the part of. . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

Defendants do not dispute that Chukwurah suffers from a serious medical need, namely his knee pain. Instead, they maintain that the claims fail because nothing supports that they acted with deliberate indifference to Chukwurah's serious medical needs. The Court agrees.

Turning first to Dr. Sisay, Chukwurah seems to fault Dr. Sisay for failing to advise expressly that joint pain can be a side effect of Lisnopril. The Complaint makes plain that when Dr. Sisay prescribed Lisinopril, he told Chukwurah to alert the medical department if knee pain developed. Dr. Sisay saw Chukwurah only once more, and Chukwurah had no complaints whatsoever. From this, no rational factfinder could conclude that Dr. Sisay was deliberately indifferent to Chukwurah's needs simply because the doctor failed to discuss the potential of joint pain as a "side effect" of the drug. Because no Complaint facts make an Eighth Amendment claim

plausible as to Dr. Sisay, his motion to dismiss is granted. Further, because Chukwurah has both amended and supplemented his Complaint but has nonetheless failed to state a legally cognizable cause of action against. Dr. Sisay, the claim is dismissed with prejudice.[6]

Like Dr. Sisay, nurse practitioner Okoye had very limited involvement with Chukwurah's care; she examined him only once when he presented with a red, swollen, and painful leg. Chukwurah maintains that Okoye had been deliberately indifferent because, in the face of these symptoms, she prescribed Lisinopril. *See* ECF No. 35 at 17. This claim is devoid of factual support. The record makes plain that Chukwurah had been at risk of blood clots and that hypertension medication such as Lisinopril reduces that risk. Moreover, Dr. Okoye reasonably believed Chukwurah was suffering from a DVT; accordingly, no rational factfinder could conclude that Okoye had been deliberately indifferent because she advised Chukwurah to resume taking the Lisinopril. Summary judgment is granted in nurse practitioner Okoye's favor.

Last, Dr. Nimely saw Chukwurah immediately after his leg had been scanned and it was determined he was suffering with a muscle tear, not a DVT. At that meeting, Chukwurah described his leg pain to be improving and even remarked he no longer needed crutches. Now, however, Chukwurah argues that Dr. Nimely should have discontinued the Lisinopril because joint pain remains a known side effect of the drug. ECF No. 35 at 7. At best, Chukwurah's contention amounts to a straightforward disagreement with how Dr. Nimely handled a single follow-up visit.

---

[6] Dr. Sisay separately argues that the claims against him are time barred because his only interaction with Chukwurah – to prescribe Lisinopril in October of 2017 – falls outside the applicable three-year limitations period. ECF No. 33-1 at 7. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (*citing Owens v. Okure*, 488 U.S. 235, 249-50 (1989)); Md. Code Ann., Cts & Jud. Proc. Code § 5-101. A claim begins to accrue when "plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim v. Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (*en banc*). For a cause of action to accrue, the plaintiff must "know that he has been hurt and who inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). Some evidence supports that Chukwurah had not been aware of any injuries arising from the alleged failure to warn until his knee problems started in October 2019. Because Chukwurah filed suit within three years from the onset of symptoms, the Court will not dismiss the claims on limitations grounds.

The record amply supports that Nimely relied on the diagnosis of a muscle tear, ECF No. 30-3 at ¶ 5, and Chukwurah's symptoms were improving. No rational factfinder could conclude that keeping Chukwurah on Lisinopril amounted to deliberate indifference, especially when considering that no record evidence supports any link between Chukwurah's knee problems and Lisinopril. Summary judgment is granted in Dr. Nimely's favor.

### IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants Green and Sisay's Motions to Dismiss and grant summary judgment in favor of Dr. Nimely and nurse practitioner Okoye. A separate order follows.

| | |
|---|---|
| 6/29/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |